**IN THE COURT OF APPEALS OF IOWA**

No. 15-0594
Filed July 9, 2015

**IN THE INTEREST OF L.D.,**
**Minor Child,**

**A.C., Mother,**
**Appellant,**

**J.S., Father,**
**Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother and father separately appeal the juvenile court's termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Daniel Northfield, Urbandale, for appellant mother.

Colin McCormack of Van Cleaf & McCormack, Des Moines, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee State.

Kimberly Ayotte of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

A mother and father separately appeal the juvenile court's termination of their parental rights to their child, L.D.

**I. Factual and Procedural Background**

L.D. was born on May 8, 2010. In late October of 2013, the county attorney learned the mother and father were alleged to have been using methamphetamine and the child had allegedly been exposed. The child was removed on October 22, 2013, and placed with his maternal grandmother and grandfather.[1] Evidence presented in an October 31, 2013 hearing showed that the mother, father, and child had all returned positive results for methamphetamine in hair stat tests.

The mother and father were not in a relationship at the time of removal. The mother had recently been released from jail, where she had been incarcerated due to drug-related issues. She did not have housing. She had been staying temporarily with a friend.

L.D. was adjudicated a child in need of assistance (CINA) following a November 2013 hearing. Both parents began attending substance abuse treatment; the mother entered a residential program and the father attended outpatient treatment. The mother remained on probation as a result of her previous drug-related arrest.

In a December 2013 hearing, both parents admitted to a history of substance abuse. The mother had used methamphetamine, marijuana, cocaine,

---

[1] The maternal grandfather we discuss throughout the case is in fact the child's step-grandfather.

and MDMA. The father had used methamphetamine, marijuana, cocaine, PCP, and LSD. The father had also recently relapsed and used methamphetamine as evidenced by a positive hair stat test. The child remained out of the parents' custody. Some concerns arose regarding the child's placement with his maternal grandparents due to the maternal grandfather's recent operating-while-intoxicated charge, second offense, and resulting probation. Following the charge, it came to light that both grandparents were abusing alcohol. The child was removed from the maternal grandparents' home and placed with a paternal aunt and uncle.

Another hearing took place in April of 2014. At that time, the father had made progress by completing a substance abuse treatment program. The father contended his drug tests were negative for substances. He had been fully exercising his visitation rights. The mother, on the other hand, had heavily relapsed into substance abuse. She was arrested for violating her probation.

Following the April hearing, the mother declined to comply with the court-recommended inpatient treatment program. She enrolled in a program at House of Mercy, which she attended very briefly before she stopped participating. She did not participate in any further treatment for another five months before enrolling in an out-patient program in September. Despite her participation in the program, she continued to return positive test results showing marijuana use.

A permanency hearing took place in October of 2014. At this hearing, the father's apparent positive progress shown at the April hearing was undermined: he had actually returned positive results for methamphetamine prior to the April hearing, but the court had been incorrectly informed the results were negative.

The father had been participating in a treatment program from which he was discharged in July of 2014 for his failure to consistently participate. He again returned positive test results for methamphetamine before enrolling in an inpatient treatment program in September of 2014. The father checked out of the program without completing it.[2] A third drug screen in late October also returned a positive result. When confronted with the third positive test result at meeting with his DHS worker, the father "informed parties that it was 'bullshit.' [H]e got upset and left the meeting."

Given both parents' lack of progress, the State moved to terminate their rights to the child. Two hearings on the State's petition took place, the first on December 19, 2014, at which only the father testified, and the second on January 9, 2015.

At the hearings, the father denied using methamphetamine despite the three positive test results. He asserted the test methodology used to return positive results—a sweat patch—was faulty and the test results were false positives.[3] He provided a hair stat result showing negative results for substances.[4] He made alternative suggestions of other circumstances that might have caused the positive results on his drugs screen. His suggestions included

---

[2] The father, in explaining his decision to leave the program, wrote to his Department of Human Services (DHS) worker, "I don't feel 30 days surrounded by criminals trying to avoid prison and trying to appease an overweight condescending 'counselor' was [i]n my best interest." After he left the program, he refused to sign a release that would allow DHS to discuss the father's short tenancy with the treatment program's administrators.

[3] Between the two termination hearings, the father filed scholarly literature discussing the scientific reliability of sweat patch tests with the juvenile court, though he declined to offer them for admission into evidence at the hearing.

[4] The juvenile court ultimately determined these test results should not be given full weight because the test was administered on the father's schedule and not randomly. Some testimony at the hearing had indicated hair stat results could be manipulated.

that he had been "hanging around" a woman who had been using and that he was exposed to a lacquer at work with a chemical composure that may have caused a false positive. Neither of these theories was supported by any evidence presented at the hearings.

In addition to the three positive test results, the father missed at least nine screening appointments throughout October, November, and December. At the first hearing, the father conceded he understood his refusal to take these tests was considered equal to failing each missed drug screen.[5] He also conceded he had used methamphetamine or marijuana "four or five times" since L.D. had been removed from his care and at least twice while he was participating in treatment.

The father argued his missed drug tests should not reflect poorly on him in the termination proceedings. As the juvenile court noted, the father's testimony was "argumentative and evasive." The father was asked, "Does [your drug usage] have a negative impact on this case?" He responded, "Not really." He insisted the allegedly false positive test results created the most significant impact on his case. He suggested past and future relapses into substance abuse were not really a problem because "relapse is part of recovery." He testified he was "baffled" by the fact his rights might be terminated.

At the second hearing, the mother testified she had last used marijuana in October 2014, but she claimed to have been sober for three or four months. She had returned clean drug screens, though the DHS worker noted the screens

---

[5] The father did not appear for at least two screenings subsequent to the hearing at which he had acknowledged his failure to appear was equal to failing the screen.

were not performed randomly. The mother was consistently exercising visitation and attending weekly substance abuse treatment. The mother's struggle with finding stable housing led her back to the maternal grandmother's home—the same home from which L.D. had been removed as a result of the grandparents' alcohol abuse.

Following the hearing, the juvenile court terminated both parents' rights to L.D. It terminated the mother's rights pursuant to Iowa Code sections 232.116(1)(d) and (f) (2013). It terminated the father's rights pursuant to Iowa Code sections 232.116(1)(d), (e), and (f). Each parent now separately appeals.

## II. Standard of Review

We review an order terminating parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

## III. Discussion

When reviewing a termination order, we undertake a three-step analysis. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). First, we determine "if a ground for termination exists under section 232.116(1)." *Id.* Second, we consider whether termination is in the child's best interests pursuant to section 232.116(2). *See id.* Third, even if termination is otherwise proper, we may decline to do so if the mitigating factors of section 232.116(3) dissuade us from terminating. *See id.*

Facts supporting termination must be established by clear and convincing evidence. *See* Iowa Code § 232.117(3). "Evidence is 'clear and convincing' when there are no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

The juvenile court relied upon multiple statutory grounds to support its termination order, but we may affirm if we find any one of them supports termination. *See In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). Because we find section 232.116(1)(f) supports termination of both parents' rights, we do not consider sections 232.116(1)(d) or (e).

Iowa Code section 232.116(1)(f) provides the juvenile court may terminate a parent's rights to a child if all of the following have occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

There is no dispute the first three requirements are satisfied.[6] Each parent instead contests the juvenile court's determination the child cannot be returned to his or her custody at the present time. To prove this element of the statutory test, the State must show that returning L.D. to his parents' custody would expose him to "some harm which would justify the adjudication of the child as a child in need of assistance." *See* Iowa Code § 232.102(5)(a)(2); *see also In re A.S.*, No. 12-1534, 2012 WL 5356160, at *3 (Iowa Ct. App. Oct. 31, 2012) ("The State meets its burden to prove this element if it presents clear and convincing evidence the

---

[6] The child was born on May 8, 2010, so he was four years old at the time of termination, satisfying section 232.116(1)(f)(1). He was adjudicated a child in need of assistance on November 22, 2013, satisfying section 232.116(1)(f)(2). He was removed from his parents' custody on October 22, 2013. He was removed for nearly fourteen consecutive months prior to the termination hearing and eighteen consecutive months prior to the juvenile court's termination order. There was no home trial period, satisfying section 232.116(1)(f)(3).

children have suffered or are imminently likely to suffer an adjudicatory harm upon their return.").

As to the father, the record shows he has not corrected the substance-abuse issues that led to L.D.'s initial removal and CINA adjudication. His claim that the supposed false positive results occurred because he had been "hanging around" a female friend while she was using methamphetamine demonstrates a lack of awareness that such a social relationship undermines his treatment requirements. He also concedes that his numerous missed drug screenings are to be considered failed screenings.

It is clear the father does not view the use of illegal substances as problematic, and he appears to believe he should be able to retain custody of L.D. regardless of his sobriety. L.D. cannot be returned to his father's custody at this time without being exposed to the same adjudicatory harm that necessitated his removal and CINA adjudication. We therefore agree with the juvenile court that section 232.116(1)(f) supports termination of the father's parental rights.

As to the mother's claim, there are multiple factors that indicate L.D. cannot be returned to her custody at this time. First, as the juvenile court noted, the mother has failed to demonstrate significant periods of sobriety. We acknowledge she demonstrated progress toward sobriety in the four months leading up to the second hearing. However, this progress is not sufficient to overcome the mother's reticence to engage in the recommended treatment programs throughout the case and her history of temporary sobriety and relapse.

Second, the mother has struggled to maintain stable and suitable housing. During some portions of this case, she was—in her own words—homeless. At

the time of the termination hearing, she resided with her mother and step-father—i.e. the maternal grandparents from whose care L.D. was previously removed due to the grandparents' alcohol abuse and grandfather's OWI offense. The mother alleged at the hearing that both the grandparents were sober, but there is no other evidence in the record to support her claim.

Though the mother's efforts to improve her substance abuse issues are significant, we find L.D. cannot currently be returned to her custody without being exposed to adjudicatory harm. *See* Iowa Code § 232.2(6)(c)(2) & (n). We therefore agree with the juvenile court that section 232.116(1)(f) also supports the termination of the mother's parental rights.

Having established a statutory ground supporting termination of each parent's rights to L.D., we next evaluate whether termination is in L.D.'s best interests pursuant to Iowa Code section 232.116(2). *See P.L.*, 778 N.W.2d at 39. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). L.D.'s safety and long-term nurturing and growth are best served by finding a permanent placement for him as soon as possible. He is now five years old and is of an age that requires stability and finality rather than the ongoing uncertainty that would accompany the prolonging of this case. L.D.'s current placement family is willing to adopt him, and he has experienced positive growth in their care. In consideration of L.D.'s physical, mental, and emotional needs, we find termination of both parents' rights to be in his best interests.

The mother asks us to consider Iowa Code sections 232.116(3)(a) and (c), which provide, "The court need not terminate the relationship between the parent and child if the court finds . . . [a] relative has legal custody of the child . . . [or] [t]here is clear and convincing evidence that termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Though it is true the child is currently placed with a relative, DHS currently has legal custody of the child, so section 232.116(3)(a) is not applicable in this case. We acknowledge there is a bond between the mother and the child as reflected in the notes of their visitations, but we do not find that bond overpowers the child's need for permanency and order as he approaches school age. The mitigating factors in section 232.116(3) are discretionary, and we do not find them sufficiently compelling in this case to decide contrary to our best-interests determination.

We affirm the juvenile court's termination of both parents' rights to L.D.

**AFFIRMED ON BOTH APPEALS.**